IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Civil No. 5:21-CR-00314-JMG |
| | : | |
| **MICHAEL HO-SUE**, | : | |
| Defendant. | : | |

GALLAGHER, J.                                                                                                    June 16, 2025

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

This matter is before the Court on Defendant Michael Ho-Sue's *pro se* Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). On February 15, 2022, Defendant pled guilty, pursuant to a binding plea agreement under Rule 11(c)(1)(C), to one count of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). The Court imposed the agreed-upon 120-month sentence on September 20, 2022. *See* Judg. at ECF No. 53. He is currently incarcerated at FCI Fort Dix and is subject to a final order of removal issued by U.S. Immigration and Customs Enforcement ("ICE") upon completion of his sentence.

On December 6, 2024, Defendant filed the instant Motion, requesting compassionate release in the form of a sentence reduction to time served. He contends that a combination of serious medical conditions, including Type II diabetes, diabetic neuropathy, iridocyclitis, osteoarthritis, glaucoma, and lingering post-COVID-19 symptoms, amount to "extraordinary and

1

compelling reasons" that warrant relief under § 3582(c)(1)(A), as recently clarified by the November 2023 amendments to U.S.S.G. § 1B1.13.

The Government opposes Defendant's Motion. The Government argues that Defendant's medical conditions are stable and adequately managed by the Bureau of Prisons' ("BOP") medical staff. It further asserts that the sentencing factors under 18 U.S.C. § 3553(a), including the seriousness of the offense and the amount of the sentence remaining, weigh heavily against granting compassionate release.

Compassionate relief is an extraordinary remedy that is only to be granted where continued incarceration would no longer serve the purposes of sentencing. Ultimately, the Court determines that the Defendant's circumstances do not satisfy this rigorous standard, and accordingly the Court will deny the Defendant's Motion.

## II.   FACTUAL BACKGROUND

On February 21, 2020, law enforcement officers from the Reading Police Department, Pennsylvania State Police, Homeland Security Investigations, and the U.S. Postal Inspection Service executed a search warrant at a second-floor apartment located at 1207 North 10th Street in Reading, Pennsylvania. The warrant followed a two-month investigation during which confidential informants conducted controlled purchases of methamphetamine from the Defendant. *See* Gov't Resp. Opp'n, ECF No. 98 at 2–3.

Upon entry, officers located Defendant in a third-floor rear bedroom. A search of the room and closet uncovered approximately 1,725 grams of methamphetamine packaged in vacuum-sealed bags stored inside coolers and containers. Investigators also recovered $28,450 in cash, two digital scales, drug-packaging materials, and personal items including a wallet bearing Defendant's identification, clothing, and two cellphones. *See* Gov't Resp. Opp'n, ECF No. 98 at 3–5. Forensic

analysis confirmed that Defendant's fingerprints were found on drug packaging, and a review of his phone revealed images of narcotics, scales, and text messages consistent with drug distribution. *See id.* at 5–6.

On August 10, 2021, a federal grand jury indicted Defendant for possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). He pled guilty on February 15, 2022, pursuant to a Rule 11(c)(1)(C) plea agreement. The Court accepted his guilty plea and imposed the agreed-upon sentence of 120 months on September 20, 2022. *See* Judg. at ECF No. 53.

As of December 2024, Defendant has served approximately 65 months, including credit for good conduct. He has maintained a clean disciplinary record, completed rehabilitative and educational programming, and is classified by the BOP as a minimum recidivism risk.

In his *pro se* Motion for Compassionate Release, *see* ECF No. 97, Defendant cites multiple chronic health conditions, including Type II diabetes with diabetic neuropathy, osteoarthritis of the lumbar spine, glaucoma, and post-COVID-19 symptoms such as chest pain and shortness of breath. He argues that these conditions are not adequately managed in BOP custody and that they constitute extraordinary and compelling reasons for a sentence reduction

The Government filed its response in opposition on December 27, 2024. *See* ECF No. 98. It does not dispute administrative exhaustion but contends that the Defendant's medical conditions are being adequately managed. The Government points to BOP treatment records showing ongoing monitoring and prescription of insulin and oral medications for diabetes, with a recent A1C of 6.9%. It further argues that he remains ambulatory, is capable of all activities of daily living, and that cardiac evaluations have shown no actionable abnormalities. It disputes the sufficiency of Defendant's caregiving claim, citing specifically that Defendant has declined an SLT OS

procedure for his eye issue, and maintains that, even assuming extraordinary and compelling reasons exist, the sentencing factors under 18 U.S.C. § 3553(a) do not support early release.

### III.  STANDARD OF REVIEW

In general, a court "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c). Though an exception to this rule comes from the compassionate release statute, § 3582(c)(1)(A), which gives a district court the power to modify an imposed sentence under specific circumstances. A district court may reduce a defendant's sentence if, "after considering the factors set forth in [18 U.S.C. §] 3553(a)," it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 § 3582(c)(1)(A). The statute thus imposes a two-step analysis: (1) whether the defendant has presented "extraordinary and compelling reasons," and (2) whether a reduction is consistent with the sentencing factors set forth in § 3553(a). *See United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021).

As a threshold matter, the defendant must demonstrate that he has exhausted all administrative remedies or that thirty days have lapsed since submitting a request to the warden. *See* 18 U.S.C. § 3582(c)(1)(A). Only after confirming that this procedural requirement is satisfied may the Court proceed to consider the merits of the motion.

The Sentencing Commission's updated policy statement, U.S.S.G. § 1B1.13 (effective Nov. 1, 2023), now explicitly applies to defendant-initiated motions and provides guidance for what may constitute "extraordinary and compelling reasons." These include, but are not limited to, serious medical conditions that substantially diminish the ability of the defendant to provide self-care, changes in family caregiving responsibilities, and other circumstances that significantly alter the sentencing landscape. *See United States v. Adeyemi*, 470 F. Supp. 3d 489, 509 (E.D. Pa.

July 6, 2020) (finding that evolving legal interpretations and medical vulnerability together may support compassionate release).

The burden remains on the defendant to demonstrate that such reasons exist. Courts remain cautious in granting relief, emphasizing that compassionate release is an "extraordinary" remedy that must be reserved for rare and compelling circumstances. *See United States v. Colon*, Crim. No. 09-00155, 2024 U.S. Dist. LEXIS 180176, at *19 (E.D. Pa. Oct. 2, 2024) (rejecting compassionate release where defendant's medical conditions did not present extraordinary circumstances).

If the court finds extraordinary and compelling reasons, it must then weigh whether release is appropriate in light of the sentencing purposes codified in § 3553(a). The applicable factors in this case are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(1)-(2). So, to grant relief, the court must find not only that extraordinary and compelling reasons exist, but also that the § 3553(a) factors support release. A court may deny

compassionate release even where extraordinary and compelling reasons are present, if the § 3553(a) factors weigh against a reduction. *See United States v. Davis*, Crim. No. 97-359, 2025 U.S. Dist. LEXIS 4807, at *5-6 (E.D. Pa. Jan. 10, 2025).

Courts retain broad discretion in evaluating these factors and may deny release where they determine that continued incarceration remains necessary to serve the interests of justice, public safety, and deterrence. *See Adeyemi*, 470 F. Supp. 3d 489, 497 (E.D. Pa. 2020) (emphasizing that even where extraordinary and compelling reasons exist, courts must still apply § 3553(a) factors, including the danger posed by release).

## IV.   ANALYSIS

### A. Threshold Requirements and Applicable Standards

There is an administrative exhaustion requirement that must be satisfied for a compassionate release motion to be considered. In this case, the Government waives any argument regarding this procedural requirement and agrees that it has been satisfied. *See* Gov't Resp. Opp'n, ECF No. 98, at 8. As this procedural requirement has been met, the Court next moves to see if "extraordinary and compelling reasons warrant such a reduction" § 3582(c)(1)(A)(i). To see what reasons qualify as extraordinary and compelling, the United States Sentencing Commission provides Section 1B1.13 of the Sentencing Guidelines. In part, Section 1B1.13(b) states:

> Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (1) Medical Circumstances of the Defendant. --
>
> > (A) The defendant is suffering from a terminal illness (i.e., a serious and advances illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a

specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, advanced dementia.

(B) The Defendant is--

    (i) suffering from a serious or physical medical condition,

    (ii) suffering from a serious functional or cognitive impairment, or

    (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

§ 1B1.13(b)(1)(A)-(C).

### B. Defendant's Medical Conditions Do Not Constitute "Extraordinary and Compelling Reasons"

In his *pro se* motion, Defendant identifies several medical conditions which he contends are sufficiently debilitating to constitute "extraordinary and compelling reasons" for a sentence reduction: type II diabetes, glaucoma, lower back pain due to arthritis, and lingering post-COVID-19 symptoms such as shortness of breath and chest pain. Defendant contends these conditions,

while not terminal, significantly impair his daily functioning and are inadequately managed by BOP.

### a. Type II Diabetes Mellitus

Defendant suffers from diabetes mellitus and is insulin dependent. He does not argue, and the record does not reflect, any functional limitations arising from the conditions, nor does he submit any medical records showing deterioration or mismanagement. The Government reports, and the medical records confirm, that Defendant receives both insulin and oral medication and that his recent A1C value is 6.9%, suggesting the condition is being controlled. See Ex. A at ECF No. 99 at 121.

Courts in this district have held that well-managed diabetes does not constitute an extraordinary and compelling basis for release. *See United States v. Daniels*, Crim. No. 15-127, 2024 U.S. Dist. LEXIS 108767, at *11–12 (E.D. Pa. June 18, 2024). In *Daniels*, the court denied compassionate release where the defendant's chronic, ongoing medical conditions were being treated by prison medical staff and did not substantially impair his ability to care for himself.

### b. Glaucoma

Defendant suffers from glaucoma and reports pain, light sensitivity, and difficulties receiving timely specialist care. Medical records confirm he is prescribed several medications related to this condition and that he has been evaluated for a selective laser trabeculoplasty (SLT OS) procedure. On September 25, 2024, he declined that procedure and signed a waiver acknowledging his refusal of treatment. See Ex. A at ECF No. 99 at 12–13, 27–28.

While Defendant has expressed frustration with appointment scheduling and pain, he has not demonstrated that he is unable to care for himself or that the condition is not being adequately treated. Courts in this district have denied compassionate release where an inmate refuses

medically recommended treatment, finding that such refusals undercut claims that BOP care is inadequate or that the condition is unmanageable in custody. *See*, *e.g.*, *Daniels*, 2024 U.S. Dist. LEXIS 108767, at *13 (denying compassionate release where defendant refused recommended medical services, undermining claim that his condition was unmanageable in prison).

### c. Lower Back Pain and Post-COVID-19 Symptoms

BOP medical records document a diagnosis of osteoarthritis, and that Defendant has been prescribed medications to treat this condition. Assessments show that he remains ambulatory and does not require any assistive devices. Defendant also reports lingering chest pain and shortness of breath since a prior COVID-19 infection. Extensive cardiac testing, including echocardiograms, stress tests, and Doppler imaging, has revealed no significant abnormalities. He remains scheduled for ongoing follow-up cardiology care.

These conditions are undoubtedly burdensome, but they are not terminal, do not substantially diminish his ability to provide self-care within the correctional facility, and they are being treated. The Sentencing Commission has made clear that chronic but managed conditions—without evidence of deterioration, functional incapacity, or inability to receive necessary care—do not satisfy the standard for compassionate release. *See* U.S.S.G. § 1B1.13(b)(1)(A)-(C); *see also Colon*, 2024 U.S. Dist. LEXIS 180176, at *19 (denying release where medical conditions did not cause serious functional impairment).

Defendant's chronic but managed health conditions do not meet the standard for extraordinary and compelling reasons warranting release.

### C. The Section 3553(a) Sentencing Factors Weigh Against Release

Even if Defendant was successful in arguing his medical conditions amounted to those of extraordinary and compelling, the Court still must weigh them against the sentencing factors of §

3553(a) to determine if release is warranted. *See United States v. Somerville*, 463 F. Supp. 3d 585, 588 (W.D. Pa. 2020) (court must weigh the extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public.

Defendant was convicted of a serious drug trafficking offense involving the possession with intent to distribute 1,725 grams of methamphetamine. The circumstances surrounding the offense, the packaging materials, digital scales, and large quantities of cash recovered, reflect commercial-scale distribution. The offense conduct followed a prior federal conviction for cocaine trafficking in 2011. This was not an isolated lapse in judgment, but rather a repeated engagement in high-level narcotics distribution. Courts have routinely denied compassionate release in cases involving similarly serious drug trafficking offenses, even when mitigating factors are present. *See*, *e.g.*, *United States v. Stewart*, 86 F.4th 532, 536 (3d Cir. 2023) (affirming denial of compassionate release despite arguments based on rehabilitation and medical vulnerability, in light of the nature of the offense).

To date, Defendant has served approximately 65 months of his 120-month sentence. Nearly half of his sentence remains. Courts regularly find that a substantial amount of time left to serve weighs against early release. *See e.g.*, *United States v. Candidi*, 2025 U.S. Dist. LEXIS 21180, at *10 (E.D. Pa. Feb. 6, 2025) (denying compassionate release where the defendant had served four years of a ten-year sentence, citing the seriousness of the offense and the need to promote respect for the law and provide just punishment under § 3553(a)). Granting compassionate release at this

stage would not reflect the seriousness of the offense, nor would it promote respect for the law or provide just punishment.

The Court does acknowledge that Defendant has maintained a clean disciplinary record in custody, has completed educational and rehabilitative programming, and is classified by the Bureau of Prisons as a minimum recidivism risk. While certainly commendable, rehabilitation alone does not warrant sentence reduction and is explicitly excluded as an independent ground for relief under 28 U.S.C. § 994(t). *See United States v. Claudio*, Crim. No. 17-546, 2022 U.S. Dist. LEXIS 91716, at *8 (E.D. Pa. May 23, 2022).

Considering all relevant sentencing factors, the Court concludes that reducing Defendant's sentence would be inconsistent with the purposes of sentencing and the interests of justice. Upon consideration of the Section 3553(a) factors, the Court finds that the original 120-month sentence remains necessary and appropriate.

Finally, the Court considers the fact that Defendant is subject to a final order of removal issued by U.S. Immigration and Customs Enforcement. If released, he would not return to supervised release in the community, but instead would likely be transferred to ICE custody. Courts have observed that such transfers may place defendants in facilities that are less equipped to deliver adequate medical care. In *United States v. Figueroa*, the court rejected the defendant's argument that pending deportation supported release, explaining that prolonged immigration proceedings could result in detention conditions "worse than what he faces now." *United States v. Figueroa*, Crim. No. 91-00518, 2020 U.S. Dist. LEXIS 205906, at *8 (E.D. Pa. Nov. 4, 2020).

## V. CONCLUSION

For the foregoing reasons, the Court finds that Defendant has not demonstrated extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

Even if the Court were to assume such reasons, the sentencing factors under § 3553(a) do not support early release. Accordingly, Defendant's Motion for Compassionate Release is denied. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge